# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 16-21874-MOORE/MCALILEY

CUTHBERT HAREWOOD

      Plaintiff,

v.

MIAMI-DADE COUNTY, a political
Subdivision of the State of Florida and JOHN
ALEXANDER, a resident of the State of
Florida,

      Defendants.

_____

## MIAMI-DADE COUNTY'S MOTION TO DISMISS COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendant, Miami-Dade County (the "County"), pursuant to Fed. R. Civ. P. 8(a) and 12(b)(6), hereby moves to dismiss the Second Amended Complaint, D.E. 4-1.

## INTRODUCTION

Plaintiff's federal § 1983 claims against the County must be dismissed, as a matter of law, for several independent reasons.  First, to impose § 1983 liability on the County, Plaintiff must show that: (1) his constitutional rights were violated; (2) the County had a custom or policy that constituted a deliberate indifference to those constitutional rights; and (3) this policy or custom caused the constitutional violations at issue.  *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).  Plaintiff has not alleged an officially promulgated County policy or unofficial custom or practice of excessive force.  Further, Plaintiff fails to identify a single prior incident involving a constitutional violation, much less a **widespread** practice that was so permanent and well-settled as to constitute a custom or usage with the force of law.  Finally, Plaintiff does not allege *how* the custom or policy caused any constitutional violation.

To the extent that Plaintiff's federal claim is premised on allegations that the County failed to properly train its officers, Plaintiff's allegations explicitly disprove that the County made a deliberate choice not to take any action regarding the potential risk associated with the use of tasers and/or tasing suspects in the chest.  Indeed, by Plaintiff's own admission, upon learning about the "potential harmful medical consequences of electroshock weapons," the Miami-Dade Board of County Commissioners noted that Miami-Dade Police Department *may* need to reform their policies for the use of the taser and provide additional training.  D.E. 4-1 at ¶ 57.  These allegations do not support a finding that a final policymaker for the County consciously disregarded any known risks.

Plaintiff's state law claims also fail because the County is entitled to sovereign immunity. The County cannot be held liable for the acts of an employee who allegedly acted outside the scope of his employment and with malice and bad faith.[1]  *See* Fla. Stat. § 768.28(9)(a).  Although Plaintiff skillfully avoids using the statutory language that would on its face trigger sovereign immunity, his state law claims are nonetheless barred based on the nature of the conduct alleged. Accordingly, this Court must dismiss Plaintiff's state law claims for false arrest/imprisonment and battery against the County as well.

---

[1]  The County denies the allegations in the Second Amended Complaint, but must, for purposes of this motion, accept them as true.  *See Twombly*, 550 U.S. at 572 ("[A] judge ruling on a defendant's motion to dismiss a complaint 'must accept as true all of the factual allegations contained in the complaint.'").

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TELEPHONE 305.375.5151

CLAIMS IN THE COMPLAINT

Plaintiff, Cuthbert Harewood ("Plaintiff"), brings this action against the County and Miami-Dade County Police Officer John Alexander ("Ofc. Alexander").[2]  The Complaint raises seven (7) claims, four (4) of which are brought against the County, including: (1) municipal liability claims under 42 U.S.C. § 1983 (Counts I and II); (2) a state law claim for false arrest/imprisonment (Count III); and (3) a state law claim for battery (Count IV).  *See* D.E. 4-1.

## **STANDARD OF REVIEW**

To survive a motion to dismiss, a complaint must contain factual allegations which are "enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 560 U.S. 544, 555 (2007).  Thus, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id*. (citations omitted).  Rather, the facts set forth in the complaint must be sufficient to "nudge the[ ] claims across the line from conceivable to plausible."  *Id*. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 680-83 (2009) (determining on a motion to dismiss involving qualified immunity asserted in a supervisory liability case that a court could ignore implausible assertions or theories advanced by plaintiff and, instead, credit an "obvious alternative explanation for the arrests").  Moreover, a plaintiff cannot deflect an attack on conclusory allegations with a promise to "flesh them out" after discovery.  *See Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006) ("[T]he discovery rules do not permit the appellants to go on a fishing expedition.").

---

[2]  John Alexander has not been served in this action and, therefore, does not join in this Motion.

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TELEPHONE 305.375.5151

<u>**ARGUMENT**</u>

**I.      Plaintiff Fails to State a Claim Under 42 U.S.C. § 1983**

Plaintiff alleges his civil rights were violated by the County's (1) failure to train its officers on the known dangerous consequences of tasing individuals in the upper torso with Taser X26 (Count I) and (2) "taser policy" which violates his Fourth Amendment right to be free from excessive force (Count II).  D.E. 4-1 at ¶¶ 45, 70.  Both claims, brought pursuant to 42 U.S.C. § 1983, must be dismissed as a matter of law.

"The Supreme Court has placed strict limitations on [local government] liability under § 1983." *Tennant v. Fla.*, 111 F. Supp. 2d 1326, 1331 (S.D. Fla. 2000).  Indeed, the U.S. Supreme Court has repeatedly held that local governments cannot be held vicariously liable for the actions of their employees when its agents or employees have caused a constitutional injury.  *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)[3] ("[W]e conclude that a municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) ("*Respondeat superior* or vicarious liability will not attach under § 1983."); *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003) ("A county's liability under § 1983 may not be based on the doctrine of respondeat superior."); *accord Skop v. City of Atlanta*, 485 F.3d 1130, 1145 (11th Cir. 2007) ("But it is by now axiomatic that in order to be held liable for a § 1983 violation, a municipality must be found to

--------

[3] Because *Monell v. New York City Dep't of Soc. Servs.* is the seminal Supreme Court decision on 42 U.S.C. § 1983 claims against municipalities, such claims are frequently referred to as *Monell* claims, as they will be here when addressing Counts I and II.

Page 4

have **itself** caused the constitutional violation at issue; it cannot be found liable on a vicarious liability theory.") (emphasis in original).

Instead, "[i]t is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable under § 1983." *City of Springfield v. Kibbe*, 480 U.S. 257, 267 (1987) (quoting *Monell*, 436 U.S. at 694). Accordingly, to impose § 1983 liability on a municipality, a plaintiff must show that: (1) his constitutional rights were violated; (2) the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) the policy or custom *caused* the violation. *Id*. citing *Canton*, 489 U.S. at 388; s*ee also Rosario v. Miami-Dade Cnty.*, 490 F. Supp. 2d 1213, 1220 (S.D. Fla. 2007) (Ungaro, J.) (dismissing, with prejudice, all claims against Miami-Dade County for failure to properly allege § 1983 claims); *Barnes v. Miami-Dade Cnty., et al.*, No. 13-cv-20778, D.E. 37 at 13-22 (S.D. Fla. Mar. 12, 2014) (Lenard, J.) (same).

To correctly allege a custom or policy, Plaintiff must allege that the constitutional violation he suffered was the result of either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through repeated acts of a final policymaker. *See Grech*, 335 F.3d at 1329. Plaintiff, as a matter of law, fails to establish Miami-Dade County's liability under both approaches.

### A. Plaintiff Fails to Allege or Identify an Officially-Promulgated County Policy

It is unclear whether Plaintiff is alleging the existence of an official policy. Read plainly, the pleading fails to identify any officially-promulgated County policy (e.g., County ordinance, resolution, or administrative order), approved by the County's final policymakers, that led to the alleged damages, much less any officially-promulgated County policy that is causally linked to his claims. *See Grech*, 335 F.3d at 1330 (recognizing that "a county rarely will have an

Page 5

officially-adopted policy of permitting a particular constitutional violation"); *see also Sanchez v. Miami-Dade Cnty.*, 2007 WL 1746190, *2 (S.D. Fla. March 28, 2007) (King, J.) ("Plaintiff fails to identify any specific 'officially promulgated policy' at all, such as an ordinance, or an administrative order.   Thus, Plaintiff certainly does not allege that any specific 'officially promulgated county policy permitted constitutional violations.'").

Plaintiff's references to "Miami-Dade County's taser policy" throughout the pleading are insufficient.   It is well established that Plaintiff cannot meet his *Monell* pleading burden by simply repeating the terms "policy," "custom," or "practice."   *See e.g., Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984) ("a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory."); *Perez v. Metro. Dade Cnty.*, No. 07-20168, 2006 WL 4056997, *2 (S.D. Fla. Apr. 28, 2006) (Moreno, J.) ("the absence of a heightened pleading requirement does not mean that a plaintiff may simply put forth vague and conclusory allegations alleging the existence of an official policy . . . the simple mention of 'policy and/or custom' is not enough, for a plaintiff must do something more than simply allege that such an official policy exists.") (citations omitted); *Rosario*, 490 F.Supp.2d at 1220; *Blanton v. Miami-Dade Cnty.*, No. 07-22282, 2007 WL 3118517, at *1 (S.D. Fla. Oct. 23, 2007) (Seitz, J.) (dismissing Section 1983 claim where plaintiff failed to allege any specific policy or custom of the city that led to the alleged violation).

Here, the pleading contains no allegations regarding a specific "officially promulgated" County policy that led to the alleged violations.   Although Plaintiff claims that "[o]n September 8, 2005, the Miami-Dade Board of County Commissioners ("the Commission") passed agenda item 12B7 [sic], which approved its police department's taser policy[,]" even the most cursory

review of Item No. 12(B)7 reveals that it is *not* what Plaintiff alleges.[4]  D.E. 4-1 at ¶ 69.  Rather,

Agenda Item 12(B)(7) is a memorandum from the County Manager to the Chairman and

Members of the Commission containing the results of the Miami-Dade Police Department's

("MDPD['s]") extensive and complete review of its "*revised taser policy.*"  *See* Ex. 1 at 1

(emphasis added).  There, the County Manager explains that there will be consideration by the

---

[4]   The Court may consider Agenda Item No. 12(B)(7), attached as Exhibit 1, because the

document is a public record, explicitly quoted and referenced throughout the pleading, and

central to Plaintiff's claim.  *See Jackson v. BellSouth Telecomm.*, 181 F. Supp. 2d 1345, 1353-54

(S.D. Fla. 2001) (finding that a court can consider matters of public record not attached to the

complaint when they are submitted by the defendant in deciding a Rule 12(b)(6) motion); s*ee

also Sosa v. Hames*, 218 F. App'x 976, 978 n.2 (11th Cir. 2007) (determining that public records

that are central to the claim can be considered on a motion to dismiss); *Walker v. Prieto*, 414 F.

Supp. 2d 1148, 1154 n.1 (S.D. Fla. 2006) (determining that a public record could be considered

on a motion to dismiss).  In *Jackson*, the Court explained that where the plaintiff refers to certain

documents in the complaint and these documents are central to the plaintiff's claim, "then the

Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal,

and the defendant's attaching such documents to the motion to dismiss will not require

conversion of the motion into a motion for summary judgment."  *Id*. at 1354 (internal quotations

omitted).  The documents can also be considered because they are obviously authentic and are

not expressly refuted by the factual allegations in the pleading.  *See Horsley v. Feldt*, 304 F.3d

1125, 1134 (11th Cir. 2002) (permitting courts to consider documents that are central to the

claim and obviously authentic in ruling on a motion to dismiss or for judgment on the pleadings).

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TELEPHONE 305.375.5151

Commission of a resolution requesting the County Manager to direct MDPD to develop a comprehensive policy relating to the use of tasers and to refrain from using them on minors except in life-threatening situations.  To that end, the County Manger states,

> I believe that the newly revised taser policy has met the intent of the proposed resolution and Board members concerns, where an 'officer's response level to resistance should always depend upon subject/officer factors such as age, size, weight, and the subject's apparent ability to physically challenge the officer or do harm to himself or others, balanced against the seriousness of the incident.'

Ex. 1 at 1.  Notably, nowhere in Agenda Item No. 12(B)7 does the Commission officially *pass* or *approve* MDPD's taser policy.  A report to the Commission is ***not*** evidence of an official policy sufficient to sustain a claim under *Monell*.  *See Sanchez*, 2007 WL 1746190, at *2 (identifying ordinances or administrative orders as officially promulgated policies); *accord Vila v. Miami-Dade Cnty.*, No. 14-cv-21346, D.E. 45 at 8-9 (Nov. 25, 2014) (Huck, J.) (dismissing plaintiff's section 1983 counts against Miami-Dade County for failure to identify any custom or policy where plaintiff identified a memorandum prepared by the mayor outlining a plan to correct problems at Miami-Dade County's six main jail facilities after a Department of Justice investigation found deficiencies in the County's treatment of inmates).

To the extent that Plaintiff's reference to Agenda Item No. 12(B)7 does sufficiently identify an *official* County policy – which it does not – the taser policy nevertheless cannot be read to constitute a policy that permits constitutional violations required to allege a *Monell* claim. In *Graham v. Connor*, 490 U.S. 386, 396 (1989), the Supreme Court adopted a standard of "objective reasonableness" in all use of force cases.  This determination "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TELEPHONE 305.375.5151

others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. The "revised taser policy" practically tracks the language of *Connor* in providing the following deployment procedures, among others:

1. An officer's response level to subject resistance should always depend upon subject/officer factors such as age, size, weight, and the subject's apparent ability to physically challenge the officer or do harm to himself or others, balanced against the seriousness of the incident.

2. An officer's decision to deploy the Taser shall involve an arrest or custodial situation wherein the subject is escalating resistance from passive physical resistance towards active physical resistance.

3. The primary purpose in the decision to deploy the Taser is to prevent a continuing escalating subject resistance or violence and to minimize injury to both the officer(s) and subject(s). The Taser shall not be used as a tool of coercion, to intimidate an individual into compliance with simple requests or directives by an officer.

4. Prior to deployment of the Taser, officers must take into consideration environmental factors.  These factors, which may contribute to serious injury, include but are not limited to; subjects standing on or near the edge of a roof, stairwells, next to a window or body of water;

Ex. 1 at 102.  A comparison of this policy to the standard articulated in *Connor* reveals that the policy, in fact, exceeds the standard of "objective reasonableness" established by the Supreme Court in all use of force cases.  For instance, MDPD's taser policy specifies the criteria that an officer should consider when assessing "whether the suspect poses an immediate threat to the safety of the officers or others," including the suspect's age, size, weight, and the subject's apparent ability to physically challenge the officer or do harm to himself or others.  *Id*. Additionally, the taser policy mandates that officers consider environmental factors, which may contribute to serious injury, before deployment of the taser.  *Id*.  As such, to the extent that

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TELEPHONE 305.375.5151

Plaintiff seeks to impose *Monell* liability based on an official policy (i.e., MDPD's taser policy), that claim fails as a matter of law because the policy cannot be read to cause the deprivation of civil rights. Because Plaintiff fails to properly allege an official policy, promulgated by the Commission or the Mayor (the County's final policymakers), which permits constitutional violations, Plaintiff's § 1983 claims must be dismissed.

### B.      Plaintiff Fails to Allege or Identify an Unofficial Policy or Practice

Plaintiff likewise fails to allege the existence of an ***unofficial*** policy, practice or custom necessary to plead a claim under Section 1983 for failure to train or excessive force.

To establish § 1983 liability against the County based on an unofficial custom or practice, "a plaintiff must establish a ***widespread*** practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.'" *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (internal quotations omitted) (emphasis added); *Denno v. Sch. Bd. of Volusia Cnty.*, 218 F.3d 1267, 1276 (11th Cir. 2000) (for the County "to be held liable under the custom or practice prong . . . [the plaintiff] must demonstrate that a custom or practice of [the alleged conduct] is so well-settled and pervasive that it assumes the force of law"). "As a general rule, an 'isolated incident, however unfortunate, does not demonstrate evidence of the County's 'persistent' or 'widespread' policy, . . . and will not be considered 'so pervasive as to be a custom or practice[.]'" *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1264 n.11 (11th Cir. 2010) (citations omitted). Such a "longstanding and widespread practice is deemed authorized by the policymaking officials because they must have known about it but failed to stop it," *Brown*, 923 F.2d at 1481, and, accordingly, "a municipality's failure to correct the constitutionally offensive actions of its employees can rise to the level of a custom or policy 'if the municipality tacitly authorizes these

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TELEPHONE 305.375.5151

actions or displays deliberate indifference' towards the misconduct." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1308 (11th Cir. 2001) (quoting *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987)); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) ("'The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.'") (quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)); *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986) ("Normally random acts or isolated incidents are insufficient to establish a custom or policy.") (citations omitted).

With respect to an unofficial custom or practice claim, the Eleventh Circuit also explicitly requires a showing that the alleged injuries were the result of "the ***repeated acts*** of a final policymaker for the county." *Grech*, 335 F. 3d at 1329 (citing *Monell*, 436 U.S. at 694) (emphasis added). A single incident cannot be considered so pervasive as to be a custom or practice. *Id*. at 1330 n.6; *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*."); *Prieto v. Metro. Dade Cnty.*, 718 F. Supp. 934, 938-39 (S.D. Fla. 1989) ("four isolated incidents . . . fall well short of proving a persistent and widespread practice sufficient to establish a policy or custom"); *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) ("Eleven incidents . . . cannot support a pattern of illegality in one of the Nation's largest cities and police forces.").

Plaintiff fails to allege the existence of a persistent, pervasive, widespread practice, involving numerous incidents of excessive force or taser shots to the chest capable of sustaining a *Monell* claim. Indeed, Plaintiff fails to plead a **single** fact regarding any prior incident involving purported constitutional violations. Instead, Plaintiff loosely and repeatedly references

Page 11

"many taser deaths and injuries," D.E. 4-1 at ¶ 40, "several incidents where citizens died after being tasered by police officers[,]" *id*. at ¶ 37, "prior incidents where officers tased individuals in the upper torso causing death or serious bodily injury," *id*. at ¶ 49, "several incidents where citizens have lost their life from being tasered[,]" *id.* at ¶ 62, and a Resolution in which the Commission stated "'there have been several incidents involving the use of Tasers on individuals who subsequently died[.]'" *Id*. at ¶ 51.  These allegations, however, are conclusory and should "carry no weight" in the Court's analysis, because "[c]onclusory allegations fail to apprise defendants of the factual basis of the plaintiff's claims."  *See Franklin v. Curry*, 738 F.3d 1246, 1250-51 (11th Cir. 2013).  Specifically, Plaintiff never attributes any of these incidents to the County or its police officers; offers no allegations as to the nature or frequency of these alleged prior incidents; and provides no details as to whether any of these alleged incidents culminated in a finding against the relevant officers, MDPD, or the County.  Without further context and detail, it is impossible to know whether the referenced incidents were part of "obvious, flagrant, [and] rampant" constitutional deprivations, rather than isolated occurrences.  *See Hartley*, 193 F.3d at 1269.  Additionally, the pleading does not specify whether these "prior incidents" resulted from constitutionally offensive actions by County police officers.  After all, a plaintiff certainly cannot establish a widespread unconstitutional practice through prior constitutional actions.  These critical omissions prove fatal to Plaintiff's federal claim.  *See, e.g., Barnes*, No. 13-cv-20778, D.E. 37 at 19 n.8 (holding that the plaintiff's allegation of "numerous incidents" of excessive force was conclusory and, therefore, deficient under the pleading standard for §1983 claims).

In fact, Plaintiff has pointed to only one incident – his own experience – to show that "[t]he County's taser policy violates a citizen's Fourth Amendment right to be free from excessive force."  D.E. 4-1 at ¶ 70.  As a result, the pleading lacks any allegations that support a

finding that the County's actions and/or omissions were part of a widespread "practice that is so settled and permanent that it takes on the force of law." *McDowell*, 392 F.3d 1283, 1290 (11th Cir. 2004); *see also, e.g., Rosario*, 490 F. Supp. 2d at 1244 (dismissing § 1983 claim against Miami-Dade County where plaintiff failed to allege facts capable of supporting the finding that the County's actions or omissions with respect to the incident in question were part of a "widespread practice rather than an isolated event").

Furthermore, to establish that a County policy caused a constitutional deprivation through a "custom or practice" in which the County was deliberately indifferent to constitutional violations, Plaintiff must allege that the County's final policymakers had subjective knowledge of a risk of serious harm ***and consciously disregarded that risk***. *Cook v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1115 (11th Cir. 2005) (quoting *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)). Plaintiff has not done so. Instead, Plaintiff alleges the County knew of "the dangerousness of tasing individuals in the chest[,]" but claims that the County deliberately disregarded that risk. D.E. 4-1 ¶ 48. However, Plaintiff then admits that "after several people died from being tasered, the Commission . . . ordered the County Manager to conduct a study on the dangerous effects of tasers on humans" because there was "'very little in the way of extensive studies or research on the subject.'" D.E. 4-1 at ¶¶ 50-51. These allegations do not show that the County consciously disregarded any risk posed by tasers. Rather, it is indicative of the County's proactive steps to address these concerns. As in *Vila*, "Plaintiff's cited policies seem to indicate the opposite of a deliberate choice of inaction. These policies, as described by Plaintiff, indicate at worst that County policymakers recognized a deficiency and attempted to rectify it." *Vila*, No. 14-cv-21346, D.E. 45 at 8-9. Therefore, Plaintiff fails to allege an

unofficial County policy, custom or practice in which the County was deliberately indifferent to a known risk of serious harm.

### C.      Plaintiff Has Not Demonstrated that any Unconstitutional Policy was the *Cause* of Plaintiff's Injuries

Additionally, to sustain a *Monell* claim against the County, the alleged policy or custom must be the moving force of the constitutional violations.  *Grech*, 335 F.3d at 1330; *see also Bd. of Cnty. Comm'rs. v. Brown*, 520 U.S. 397, 403 (1997).   Therefore, Plaintiff must also "demonstrate a causal link between [the County custom] and the deprivation of federal rights." *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) ("[O]fficial policy must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983.'") (quoting *Monell*, 436 U.S. at 694); s*ee also Monell*, 436 U.S. at 694; *Cagle v. Sutherland*, 334 F.3d 980, 986 (11th Cir. 2003) ("[t]o subject a county to liability under section 1983 [a] plaintiff must show that the [claimed] constitutional violation occurred as a result of a county policy.").   "[I]t is only when the 'execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable under § 1983." *City of Springfield v. Kibbe*, 480 U.S. 257, 267 (1987).

Plaintiff fails to allege any facts that any decision made, or custom approved, by a final policymaker of the County was the <u>cause</u> of his injuries.  To do so, Plaintiff would have to point to a County policy or custom that *permits* excessive force.  Plaintiff has failed to do so.  Thus, and for all of the reasons outlined above, Plaintiff's *Monell* claims against the County must be dismissed.  *See Polk Cnty.*, 454 U.S. at 326; *see also Hall v. Smith*, No. 3:05 CV 68 J 25MMH, 2005 WL 1871144, *4 (M.D. Fla. July 27, 2005) (granting defendant's motion to dismiss

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TELEPHONE 305.375.5151

because plaintiff "failed to allege any facts to evidence a City custom, policy or practice which caused him to be deprived of a constitutional right.").

### D.      Plaintiff's Failure to Train Claim Fails as a Matter of Law

In Count I, Plaintiff also appears to attack the County's training program as it relates to "the known dangerous consequences of tasing individuals in the upper torso with Taser X26." D.E. 4-1 at ¶ 45.  Any claim for failure to train against the County must also fail, for several reasons.  First, Plaintiff has failed to identify a widespread practice of inadequate training such that the County was aware of, *but was deliberately indifferent to*, the purported problem. Plaintiff also fails to allege any facts demonstrating that the Commission or Mayor approved, or were specifically aware of, a policy or custom of failing to properly train police officers, which caused any alleged injuries.  Finally, Plaintiff fails to allege or identify a pattern of widespread prior *constitutional violations* necessary to show that the County displayed deliberate indifference to the purported unconstitutional acts of its police officers.

The Supreme Court has strongly cautioned that a local government's "failure to train" its officers can be the basis for section 1983 liability only in "limited circumstances."  *City of Canton*, 489 U.S. at 387; *see also Brown*, 520 U.S. at 410 (holding that the "deliberate indifference" standard "is a stringent standard of fault"); *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) ("[T]he Supreme Court has explained that there are only 'limited circumstances' in which an allegation of a failure to train or supervise can be the basis for liability under § 1983.").  The elements necessary to establish deliberate indifference in the Eleventh Circuit are: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that is more than mere negligence.  *Williams v. DeKalb Cnty.*, No. 07-14367, 2009 WL 1215961, at *3 (11th Cir. May 6, 2009).  Thus, the alleged failure to train must

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TELEPHONE 305.375.5151

have been a "deliberate or conscious choice." *Gold*, 151 F.3d at 1350. To establish such a choice, Plaintiff must show that a past pattern of incidents put the government on notice of a need to train, and yet, it deliberately opted not to do so, thereby resulting in a violation of his rights. *Id*.; *see also Brown*, 520 U.S. at 410 (holding that notice of a need to train is demonstrated by a pattern of similar constitutional violations, and therefore allegations regarding prior incidents by untrained employees are "ordinarily necessary."). Here, the pleading contains ***no*** allegations of a past incident – much less a pattern of incidents – evincing a history of constitutional violations.

If anything, Plaintiff's own allegations directly refute any claim that a final policymaker had subjective awareness of a serious risk ***and*** consciously disregarded that risk. For example, Plaintiff alleges that, in 2005, after several people died from being tasered, the Commission ordered the County Manager to conduct a study on the dangerous effects of tasers on humans.[5] D.E. 4-1 at ¶ 50. Plaintiff also alleges that, in June 2014, the Commission passed Agenda Item No. 11(A)(7), "which acknowledged 'several incidents in recent months in Miami-Dade County involving the use of tasers on individuals who have subsequently lost their lives[.]'" D.E. 4-1 at ¶ 57. He also alleges that the Commission specifically noted that "'given the potential harmful medical consequences of electroshock weapons, **Miami-Dade Police Department may need to reform their policies for the use of the taser and provide additional training to dramatically**

---

[5] Incidentally, this completely mischaracterizes the Resolution, which requested the County Manger to expedite a study on the *effects* of Tasers on humans, using a neutral and reputable group. *See* Exhibit 2 at 1. Plaintiff editorializes and conveniently adds the modifier of "dangerous" effects to this sentence.

TELEPHONE 305.375.5151

__reduce accidental loss of life.__'"  *Id.* at ¶ 57 (emphasis in original).  These allegations hardly support a finding that any final policymaker had knowledge of serious risks and consciously disregarded these concerns.  On the contrary, it shows that the County's final policymakers took action upon becoming aware of even the potential for any such risks.  Accordingly, Plaintiff's failure to train claim must be dismissed because he fails to allege that a final policymaker ***consciously chose*** to disregard the risk "with deliberate indifference to its known or obvious consequences" and by conduct that is more than mere negligence.  *McDowell*, 392 F.3d 1291 (quotations omitted); *see also Gold*, 151 F.3d at 1350 (quoting *City of Canton*, 489 U.S. 378 ("Only where a failure to train reflects a 'deliberate' or 'conscious' choice by the municipality can the failure be properly thought of as actionable city 'policy.'")).

Accordingly, Plaintiff's federal claims against the County (Counts I and II) must be dismissed as a matter of law.

## II.    The County is Entitled to Sovereign Immunity as to Plaintiff's State Law Claims (Counts III and IV)

The doctrine of sovereign immunity provides the County with immunity from suit under state law except in those circumstances where the State has given its consent to be sued.  *See Moore v. Miami-Dade Cnty.*, 502 F. Supp. 2d 1224, 1234-35 (S.D. Fla. 2007).  In 1973, Florida partially waived its sovereign immunity when the Florida legislature enacted Florida Statute Section 768.28.  In doing so, Florida gave its consent to be sued in certain tort actions, but "only to the extent specified" in the act.  Fla. Stat. § 768.28(1).  One such limitation is that Florida did not waive its sovereign immunity for the acts of its employees or officers that are committed "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."  Fla. Stat. § 768.28(9)(a).  Further, questions of immunity

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TELEPHONE 305.375.5151

must be resolved at the earliest stage possible.  *See Hunter v. Bryant*, 502 U.S. 224, 227 (1997) ("[B]ecause the entitlement is an *immunity from suit* rather than a mere defense to liability, we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.") (emphasis in original; other alterations omitted).

This court should follow the numerous courts in our district that have granted dismissal based on section 768.28(9)(a) when the allegations amount to bad faith and/or willful conduct. *See Alicea v. Miami-Dade Cnty., et al.*, Case No. 13-21549-civ-Bloom, D.E. No. 95 at 4-6 (Oct. 27, 2014); *Mena v. Miami-Dade Cnty.*, No. 14-20030-CIV, 2014 WL 3667806 (S.D. Fla. July 22, 2014); *Knight v. Miami-Dade Cnty.*, No. 09-23462-Civ-Graham, D.E. No. 34 at 10-11 (S.D. Fla. June 23, 2010) (Graham, J.); *Thomson v. Davenport*, No. 09-21708-Civ-Gold/McAliley, D.E. No. 59 at 9-10 (S.D. Fla. June 16, 2010) (Gold, J.); *Terry v. Rodriguez*, 09-23726, 2010 WL 2342382, *2 (S.D. Fla. June 7, 2010) (Hoevler, J.); *Asprilla v. Trinidad*, No. 6:09-cv-101-Orl-28KRS, 2009 WL 2151156, *4 (M.D. Fla. July 14, 2009); *Sanchez v. Miami-Dade Cnty.*, 06-21717-CIV, 2007 WL 1746190, *1 (S.D. Fla. Mar. 28, 2007) (King, J.); *Dukes v. Miami-Dade Cnty.*, No. 05-22665-Civ-Huck/Simonton, 2006 U.S. Dist. LEXIS 97041, D.E. 103 at *7-8 (S.D. Fla. July 5, 2006).

In *Blue v. Miami-Dade County*, No. 10-23599-CIV, 2011 WL 2447699 (S.D. Fla. May 6, 2013), Judge Huck found that conduct alleged by the plaintiff "[could] be determined 'malicious' or 'committed in bad faith' or 'in a manner exhibiting wanton and willful disregard of human rights, safety, or property' ***regardless of whether Plaintiff characterizes them as such***." (emphasis added).  After considering the allegations, Judge Huck determined that the tort alleged "[could] not be characterized as anything but [an act] committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or

Page 18

property" and could not sustain a claim against the sovereign. *Id.* Similarly, in *Alicea v. Miami-Dade County*, although the "[p]laintiff's complaint skillfully avoid[ed] the words 'malicious, bad faith or in reckless and wanton disregard for human rights, safety, or property[,]'" the district court nevertheless found that sovereign immunity barred the claims based on the nature of the conduct alleged. *Alicea*, No. 13-21549-civ-Bloom, D.E. 95 at 5-6.

Here, Plaintiff alleges that Ofc. Alexander ordered him to back away from a vehicle – a command with which he claims he complied. D.E. 4-1 at ¶¶ 20, 26. Then, the officer allegedly slammed him in the middle of the street and tased him in the area near his heart three times, for a total of 15 seconds during an 18-second period. *Id.* at ¶¶ 27, 29-33. Plaintiff also claims that when he motioned toward his chest in pain, Ofc. Alexander pulled out his firearm, placed it against Plaintiff's head, and screamed, "'I will fucking kill you.'" *Id.* at ¶ 34. Plaintiff also pleads that he did not resist Ofc. Alexander at any time, *id.* at ¶ 28, and that Ofc. Alexander deployed his taser without ever giving him verbal commands, let alone enough time to comply therewith. *Id.* at ¶ 33, n.1. According to Plaintiff, these actions culminated in Ofc. Alexander arresting him for battery on a law enforcement officer and resisting arrest without violence in the absence of probable cause to arrest for any offense. *Id.* at ¶ 94.

These allegations are similar to those which triggered the County's sovereign immunity in *Mena*. In *Mena*, officers ordered the plaintiffs out of their vehicle and, despite the plaintiffs' compliance, threw them onto the ground, beat them, and arrested them. Judge Moreno found that § 768.28(9)(a) barred the claim against the County and dismissed the claims because of the specific factual allegations that the officers' conduct could only be characterized as actions committed in bad faith or with malicious purpose. *Mena*, 2014 WL 3667806, at *2.

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TELEPHONE 305.375.5151

*Alicea, Asprilla, Blue*, and *Mena* were all decided on motions to dismiss and presented factual allegations similar to those submitted here. In these cases, the police officers were alleged to have made arrests under circumstances where no conceivable probable cause existed. The same is true here; accepting the facts as true, the claims can only be characterized as actions committed "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). Although Plaintiff deliberately omits these magic words from the pleading, the County is nevertheless entitled to sovereign immunity as to the state law claims for false arrest/imprisonment (Counts III) and battery (Count IV).

## **CONCLUSION**

For the foregoing reasons, the claims against Miami-Dade County should be dismissed.

Dated: June 14, 2016

Respectfully submitted,

**ABIGAIL PRICE-WILLIAMS**
Miami-Dade County Attorney
*Attorney for Miami-Dade County*
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128

By: *s/ Jennifer L. Hochstadt*
      Jennifer L. Hochstadt
      Assistant County Attorney
      Florida Bar No. 56035
      e-mail: hochsta@miamidade.gov
      Phone: (305) 375-5151
      Fax: (305) 375-5611

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TELEPHONE 305.375.5151

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2016, a true and correct copy of the foregoing was served on all counsel of record in the manner indicated on the Service List below.

 *s/ Jennifer L. Hochstadt*
Assistant County Attorney

## SERVICE LIST

**Counsel for Plaintiff**
Hilton Napoleon, Esq.
e-mail: hnapoleon@rascoklock.com
RASCO KLOCK PEREZ NIETO
2555 Ponce de Leon Blvd., Suite 600
Coral Gables, Florida 33134
Tel: (305) 476-7111
Fax: (305) 675-7707

*Electronic service via CM/ECF*

**Counsel for Miami-Dade County**
Jennifer L. Hochstadt
e-mail: hochsta@miamidade.gov
Miami-Dade County Attorney's Office
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128
Tel:  (305) 375-5151
Fax:  (305) 375-5611

*No service necessary*

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TELEPHONE 305.375.5151