UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 16-CV-21874-KMM

CUTHBERT HAREWOOD,

        Plaintiff,

v.

MIAMI-DADE COUNTY, a political
subdivision of the State of Florida and
JOHN ALEXANDER, a resident of
the State of Florida,

        Defendants.
_____/

## RESPONSE TO MIAMI-DADE COUNTY'S MOTION TO DISMISS COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, Cuthbert Harewood ("Mr. Harewood"), hereby files this Response to Miami-Dade County's (the "County") Motion to Dismiss Complaint and Incorporated Memorandum of Law ("Motion to Dismiss") [D.E. 11], filed on June 14, 2016. In response, Mr. Harewood states the following:

### INTRODUCTION

Mr. Harewood filed a seven count complaint against Miami-Dade County and one of its police officers, John Alexander ("Officer Alexander"). The claims directed against Miami-Dade County, which it seeks to dismiss, are: (Count I) municipal liability pursuant to 42 U.S.C. § 1983 (failure to train); (Count II) municipal liability pursuant to 42 U.S.C. § 1983 (taser policy); (Count III) state law false arrest/imprisonment; and (Count IV) state law battery.

The County claims that Count II of Mr. Harewood's Complaint fails to allege "an officially promulgated County policy" of excessive force. The County essentially asks this Court ignore the facts alleged in his Complaint and conclude that Agenda Item 12(B)7 was not "officially promulgated," solely because it does not have a "pass/fail" vote attached to the face of the document. The County submits no evidence, other than its assertion, that Agenda Item 12(B)7 did not "pass." Here, Mr. Harewood attaches the order "passing" Agenda Item 12(B)(7), proving that on September 8, 2005, the Board of County Commissioners *passed* Agenda Item 12(B)7, entitled, "Miami-Dade Police Department Taser Policy Additionally, the documents contained therein clearly shows that the County Manager ordered the Director of the Miami-Dade Police Department to revise the County's taser policy. Viewed in the light most favorable to Mr. Harewood, the Complaint sufficiently pled that the County's taser policy was officially promulgated.

Regarding Count I of Mr. Harewood's Complaint, the County misapplies the federal pleading requirement and tacitly suggests that "failure to train" claims are subjected to a higher pleading standard. The County repeatedly fails to recognize that Federal Rule of Civil Procedure 8(a)(2) calls for "a short and plain statement of the claims showing that the pleader is entitled to relief." There is 'no heightened pleading' requirement to state a claim for damages pursuant to section 1983.

Finally, the County claims that it is entitled to immunity on Mr. Harewood's state law claims because Officer Alexander acted maliciously and outside the scope of his employment. Whether Officer Alexander acted willfully or with malice is a question of fact for the jury.

**STANDARD OF REVIEW**

Unlike government agents sued in their individual capacity, the defense of qualified immunity is not available to municipalities. *Owen v. City of Independence, Mo.*, 445 U.S. 622, 642 (1980). Therefore, when deciding the County's motion to dismiss, this Court must only determine whether Mr. Harewood's Complaint alleged sufficient facts to support his claim under Federal Rule of Civil Procedure 8(a)(2). *See Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346 (2014). There is 'no heightened pleading' requirement to state a claim for damages pursuant to section 1983. *See Randall v. Scott*, 610 F.3d 701, 709-710 (11th Cir. 2010)("after *Iqbal* it is clear that there is no "heightened pleading standard" as it relates to cases governed by Rule 8(a)(2), including civil rights complaints").

**ARGUMENT**

**I.   MR. HAREWOOD PROPERLY ALLEGED A *MONELL* VIOLATION BASED ON THE COUNTY'S TASER POLICY.**

The County is liable under 42 U.S.C. § 1983 if one of its agents injures an individual while acting pursuant to a municipal policy. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978). A municipal policy can be establish by showing either "an official policy" promulgated by policymakers or "an unofficial policy, custom or practice" shown through repeated acts of its agents. *See Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003).

Count II of the Complaint seeks liability based solely on the County's officially promulgated taser policy, approved by the County Commission and County Manager – not an "unofficial custom or practice." Therefore, Mr. Harewood was require to allege: (1) a County agent violated his constitutional rights; (2) the agent was acting pursuant to an official policy promulgated by its policymakers; and (3) the policy was a contributing force behind the violation. *See Monell*, 436 U.S. at 695. The County does not contest that the facts in the Complaint properly

allege a constitutional violation. [D.E. 11, pg. 4-9]. The County's main contention is whether Officer Alexander was acting pursuant to an official promulgated policy, and whether such policy was a contributing force behind the violation. [D.E. 11, pg. 5].

**The County's Taser Policy was Officially Promulgated.**

In his Complaint, Mr. Harewood alleged that the County approved its taser policy by passing Agenda Item No. 12(B)7.[1] [D.E. 4-1, ¶69]. In somewhat of a surprising fashion, the County contests that its taser policy was "officially promulgated" because "nowhere in Agenda Item No. 12(B)7 does the Commission officially pass or approve MDPD's taser policy." [D.E. 11, pg. 8].

The County essentially asks this Court conclude that Agenda Item 12(B)7 was not "officially promulgated," solely because it does not have a "pass/fail" vote attached to the face of the document. The County should know that a document "passing" an Agenda Item can hardly be placed within the content of the Agenda Item itself. That would be "putting the cart before the horse." The County submits no evidence, other than its own assertion, that Agenda Item 12(B)7 did not "pass." The County then asks the Court to construe its own "lack of documentary evidence" in the light most favorable to it, which is clearly improper. *See Bell Atl. Corp. v.*

---

[1] The Southern District of Florida has consistently recognized that the final policymaking authority for Miami-Dade County rests solely with the Board of County Commissioners or the County Manager. *See Rosario v. Miami-Dade County*, 490 F. Supp. 2d 1213 (S.D. Fla. 2007); *Wilson v. Miami-Dade County*, 2005 WL 3597737 (S.D. Fla. Sept. 19, 2005). Agenda Item 12(B)7 is a report from the County Manager to the Board of Commissioners which memorializes his progress on revising the County's taser policy, as he had been directed to do.

*Twombly*, 550 U.S. 544 (2007)(all facts must be construed in the light most favorable to the plaintiff when deciding a motion to dismiss).

More importantly, the County is flat-out wrong. The highlighted portions of Exhibit "A" clearly show that on September 8, 2005, the Board of County Commissioners *passed* Agenda Item 12(B)7, which is entitled, "Miami-Dade Police Department Taser Policy." The Legislative History also shows that the agenda passed, and that the Board of County Commissioners was the legislative body that passed it. Furthermore, Exhibit "A" also references Agenda Item No. 11(A)(12), which is a separate *resolution* passed by the Commission that ordered the County Manager to direct the Director of MDPD to develop the County's taser policy. *See* Agenda Item No. 11(A)(12) attached as Exhibit "B."[2] This fact alone undoubtedly proves that, regardless of who drafted it, the County's taser policy stated in Agenda Item 12(B)7 was approved and promulgated by its policymakers.

The County attached the documents contained within Agenda Item 12(B)7 to its Motion to Dismiss to show that the County's taser policy was not "officially promulgated," but the documents themselves show the complete opposite. [D.E. 11-1]. The first page of 12(B)7 is a memorandum from the County Manager to the Board of County Commissioners[3] explaining his progress in revising the County's taser policy:

> The Miami-Dade Police Department has conducted a complete review of *the County's* existing taser policy.... At the March 1, 2005, BCC meeting, the Board will consider a resolution … requesting the County Manager to direct MDPD to

---

[2] The Commission had already passed Agenda Item 2(A) on March 1, 2005, which is another resolution ordering the County Manager to direct the MDPD to develop the County's taser policy, attached as Exhibit "C."

[3] The memorandum references eight documents (labeled "A" – "H"), totaling 116 pages, and includes the self-proclaimed "taser policy."

> develop a comprehensive policy relating to the use of tasers and to refrain from using them on minors…. I believe that the newly revised taser policy has met the intent of the proposed resolution and Board members concerns.

[D.E. 11-1, pg. 1]. The County's attachment, viewed in the light most favorable to Mr. Harewood, actually proves that its taser policy was officially promulgated by its policymakers.

**The Taser Policy.**

Mr. Harewood challenges the County's taser policy because it allows officers to deploy tasers whenever a subject is "escalating resistance from passive physical resistance toward active physical resistance." Although the County notably failed to define this term in its motion, the County's policy specifically does so, as does Mr. Harewood's Complaint. [D.E. 11-1, pg. 107; D.E. 4-1 ¶7]. The taser policy states:

> Escalating resistance from passive physical resistance toward active physical resistance occurs when the subject is exhibiting threatening body language (which is including but not limited to balding the body, assuming a boxer stance, circling the officer, moving the hands from open to closed forming a first, etc.) associated with verbal threats, **or** *refusing to comply with the officer's instructions and has the apparent ability to physically challenge the officer*. (emphasis added).

In essence, an officer can deploy his taser whenever a subject is "refusing to comply with instructions,"[4] especially since virtually anyone "has the apparent ability to challenge an officer."

In determining municipal liability when agents act pursuant to an officially promulgated policy, courts apply the policy to the particular facts of the case. *See Tennessee v. Garner*, 471 U.S. 1, 6 (1985)("the Tennessee statute failed as applied to this case"). Multiple courts, including *Monell*, have taken this "as applied" approach. *See e.g*. *Cooper v. Dillon*, 403 F.3d 1208, 1223 (11th Cir. 2005)(finding municipal liability for enforcing an unconstitutional state

---

[4] Mr. Harewood is not challenging an officer's ability to deploy a taser when a subject is exhibiting threatening body language … associated with verbal threats.

6

statute); *McKusick v. City of Melbourne,* 96 F.3d 478, 484 (11th Cir.1996) (finding section 1983 liability could exist where the decision to enforce an injunction resulted in a deprivation of constitutional rights); *Vives v. City of New York*, 524 F.3d 346, 357 (2d Cir. 2008)(City's policy violated Vives constitutional rights based on the fact of the case).

In *Garner*, the Supreme Court and Sixth Circuit decided a very similar issue.  The State of Tennessee enacted a statute that provided: [i]f, after notice of the intention to arrest the defendant, he either flees or forcibly resists, the officer may use all the necessary means to effect an arrest," including deadly force. *Garner*, 471 U.S. at 1.  A Memphis police officer shot an unarmed, 15-year-old boy, who was suspected of burglary. *Id*. at 5.  The juvenile fled over a fence after the officer commanded him to halt. *Id.*  The officer knew that the juvenile was unarmed, but shot him pursuant to the statute because the officer believed that if the juvenile made it over the fence, he would avoid apprehension. *Id.*  The juvenile later died, and his father brought a *Monell* claim against the City of Memphis for its policy allowing officers to use deadly force to apprehend nonviolent fleeing suspects. *Id.*

The Supreme Court held that Tennessee's statute was unconstitutional *as applied* to the fact of that case because "it did not adequately limit the use of deadly force by distinguishing between felonies of different magnitudes." *Id.* at 6.  The Court stated that "[t]he use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable," and that the statute "is invalid insofar as it purported to give [the officer] the authority to act as he did." *Id.*

Here, the County's "no nonsense" taser policy is overbroad and constitutionally unreasonable *as applied* to the incident involving Mr. Harewood.  Mr. Harewood was talking to his wife through her car window, and Officer Alexander stated over his loud speaker, "Yo, get

7

away from the car." [D.E. 4-1, ¶20]. Mr. Harewood looked up to verify that Officer Alexander was speaking to him and attempted to explain that his wife was driving the car, and that he was advising her where to park. [D.E. 4-1, ¶21, 22]. Officer Alexander cut him off and stated, "Get the fuck away from the car!" [D.E. 4-1, ¶24]. Mr. Harewood walked slowly backward toward the curb with his hands up and stated, "I'm a grown man. You don't have to talk to me like that." [D.E. 4-1, ¶26]. Since Officer Alexander believed that Mr. Harewood "failed to immediately comply with instructions," and since Mr. Harewood's speed of retreat did not meet Officer Alexander's liking, Officer Alexander tasered him pursuant to the County's overbroad policy. [D.E. 4-1, ¶73].

The policy is unconstitutional, *as applied*, because it allowed Officer Alexander to taser Mr. Harewood essentially for not listening fast enough. *See e.g. Hadley v. Gutierrez,* 526 F.3d 1324, 1330(11th Cir. 2008)(gratuitous use of force when a criminal suspect is not physically resisting arrest is unreasonable and violates the Fourth Amendment); *Fils v. City of Aventura*, 647 F. 3d 1272, 1288 (11th Cir. 2011)(tasering nonviolent suspect who was not resisting arrest was unreasonable). The County's policy does not limit the use of force by distinguishing between subjects who are in the process of complying with the officer's instruction and those who are not, nor does it distinguish between subjects who have committed a crime and those who have not. As such, the County's taser policy is constitutionally unreasonable insofar as it purports to give officers authority to taser individuals for "refusing to comply with instructions." *See Garner v. Memphis Police Dept.*, 8 F. 3d 358 (6th Cir. 1993).

The County suggests that "the taser policy … cannot be read to constitute a policy that permits constitutional violations" based on the Supreme Court ruling in *Graham v. Connor*, 490 U.S. 386, 396 (1989). [D.E. 11, pg. 8]. According to the County, "the Supreme Court adopted a

8

standard of 'objective reasonableness' in all use of force cases." [D.E. 11, pg. 8]. The County's argument fails because the "objective reasonableness" standard articulated in *Connor* applies only when courts are assessing a police officer's *individual* conduct.[5]

As stated above, when determining whether a *municipality* is liable for an officially promulgated policy, courts apply the policy to the facts of that particular incident. *See Tennessee v. Garner*, 471 U.S. 1, 6 (1985); *Cooper v. Dillon*, 403 F.3d 1208, 1223 (11th Cir. 2005)(finding municipal liability for enforcing an unconstitutional state statute); *McKusick v. City of Melbourne,* 96 F.3d 478, 484 (11th Cir.1996); *Vives v. City of New York*, 524 F.3d 346, 357 (2d Cir. 2008). To put it bluntly, the fact that the County "did not intend to violate the Constitution," and enacted an "objectively reasonable" policy, is no defense.[6] *See Owen v. City of Independence, Mo*., 445 U.S. 622, 642 (1980)(numerous decisions in our history have "awarded damages against municipalities for violations expressly found to have been committed in good faith") *citing  Town Council of Akron v. McComb*, 18 Ohio 229, 230–31 (1849); *Horton v.*

---

[5]Even if the "objectively reasonable" standard did apply, the County's argument still fails.  It is not objectively reasonable to allow an officer to taser an individual simply because he "refused to comply with the officer's instruction," regardless of the circumstances.

[6] According to *Owen v. City of Indep., Mo*., 445 U.S. 622, 651-652 (1980):

> Knowledge that a municipality will be liable for all of its injurious conduct, whether committed in good faith or not, should create an incentive for officials who may harbor doubts about the lawfulness of their intended actions to err on the side of protecting citizens' constitutional rights.[34] Furthermore, the threat that damages might be levied against the city may encourage those in a policymaking position to institute internal rules and programs designed to minimize the likelihood of unintentional infringements on constitutional rights.[35] Such procedures are particularly beneficial in preventing those "systemic" injuries that result not so much from the conduct of any single individual, but from the interactive behavior of several government officials, each of whom may be acting in good faith.

*Inhabitants of Ipswich*, 66 Mass. 488, 489-92 (1853); *Elliot v. Concord*, 27 N.H. 204 (1853); *Hurley v. Town of Texas*, 20 Wis. 634, 637–38 (1866); *Lee v. Village of Sandy Hill*, 40 N.Y. 442, 448–51 (1869); *Billings v. Worcester*, 102 Mass. 329, 332–33 (1869); *Squiers v. Village of Neenah*, 24 Wis. 588, 593 (1869); *Hawks v. Charlemont*, 107 Mass. 414, 417–418 (1871).

In *Garner*, the Sixth Circuit rejected a similar argument asserted by the City of Memphis after the Supreme Court remanded the case to clarify municipal liability. *Garner v. Memphis Police Dept.*, 8 F. 3d 358 (6th Cir. 1993). The City of Memphis claimed that a municipality is liable only if the policy shows a "deliberate indifference" to a constitutional right. *Id.* at 365. According to the Sixth Circuit, the "deliberate indifference" standard applies when a municipality fails to act, not when it enacts a written policy. *Id.* at 366. The fact that the City of Memphis "did not intend to violate the Constitution is no defense." *Id*.

**Causation**

Courts have consistent ruled that, when a government agent violates an individual's constitutional rights while acting pursuant to an official policy, the only remaining issue is whether the policy caused the injury complained of."[7] *See Garner*, 8 F. 3d at 364 ("plaintiff need only show that the policy caused the injury complained of, [*i.e.*] the death of plaintiff's son"); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)("municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances … because [such] decision … unquestionably constitutes an act of official government policy").

---

[7]Again, Mr. Harewood's Complaint is based solely on the County's officially promulgated taser policy. Accordingly, there is no need to address the elements to prove an "unofficial policy, custom or practice," as the County did in pages 10-13 of its Motion to Dismiss.

10

The County's policy allows officers to taser anyone who fails to follow instructions, regardless of whether the command is lawful, the subject is afforded a reasonable opportunity, or the officer gives a single command.  Viewing the facts in the light most favorable to Mr. Harewood, there is a sufficient link between the County's taser policy and Mr. Harewood's injuries.  *See Garner*, 8 F. 3d at 365 ("there is a sufficient link between [Memphis'] deadly force policy and [the officer's] action to establish that the policy was the 'moving force of the constitutional violation'").

## II. MR. HAREWOOD PROPERLY ALLEGED THAT THE COUNTY FAILED TO TRAIN ITS OFFICERS TO AVOID TASER SHOTS TO THE UPPER TORSO.

In Count I of his Complaint, Mr. Harewood alleges that the County failed to train its officers to the "known dangerous consequences of tasering individuals in the upper torso with Taser X26." [D.E. 4-1, ¶49].  The County claims that Mr. Harewood's Complaint should be dismissed because he failed to allege sufficient facts to show: (1) that the training was inadequate; (2) that the Commission or Manager was aware of the inadequate training based on prior constitutional violations; and (3) that the County was "deliberately indifferent" to the purported problem.  [D.E. 11, pg. 15].

As a preliminary issue, the County repeatedly fails to recognize that Federal Rule of Civil Procedure 8(a)(2) calls for "a short and plain statement of the claims showing that the pleader is entitled to relief."  *See Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346 (2014).  There is no "heightened pleading" requirement to state a claim for damages pursuant to section 1983.  *See Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010)("after *Iqbal* it is clear that there is no 'heightened pleading standard' as it relates to cases governed by Rule 8(a)(2), including civil rights complaints").  Furthermore, every inference must be resolved in the light most favorable to the non-moving party, *i.e.* Mr. Harewood.  *Johnson*, 135 S. Ct. at 347.

11

**Inadequacy of Training**

In his Complaint, Mr. Harewood pointed to specific instances where the County *admitted* that its taser training is inadequate:

> In 2014, the [Commission] acknowledge [that] "several incidents in recent months in Miami-Dade County involving the use of tasers on individuals who have subsequently lost their lives," and "given the potential harmful medical consequences of electroshock weapons, Miami-Dade Police Department may need to reform their policies for the use of the taser and **provide additional training to dramatically reduce accidental loss of life.**"

[D.E. 4-1, ¶57]. This *admission*, in-and-of itself, "nudges [Mr. Harewood's] claim across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 560 U.S. 544, 570 (2007). Nevertheless, Mr. Harewood went even further in his Complaint and alleged, *inter alia*: "In 2005, the after several people died from being tasered, the Commission passed [a resolution] and ordered the County Manager to conduct a study on the dangerous effects of tasers on humans" [D.E. 4-1, ¶50]; In October 2009, "Taser International told … Miami-Dade County that officers should avoid taser shots to the chest," nevertheless "the County did not train its officers on the new recommended point of aim." [D.E. 4-1, ¶53].

The County acknowledges that these facts were alleged, but claims they are legally insufficient to state a claim. In essence, the County is asking this Court to view the facts in a light most favorable to it, which, again, is impermissible. *Johnson*, 135 S. Ct. at 347.

**Prior Constitutional Violations**

The County also claims that "the pleading contains no allegations of a past incident – much less a pattern of incidents – evincing a history of constitutional violations." [D.E. 11, pg. 16]. The County's argument implicitly suggests that "failure to train" claims are subjected to a heightened pleading standard (*i.e.* plaintiff must allege prior incidents by name and date), a notion which the Supreme Court directly rejected. *Johnson*, 135 S. Ct. at 347; *Randall*, 610 F.3d

701, 709-710.   The County cannot point to any case post *Iqbal* that requires the plaintiff to plead "specific prior incidents" in his Complaint – and with good reason.  How many "prior incidents" would be enough?  Such an obstacle would undoubtedly frustrate the general pleading requirement of Rule 8(a), and it would be virtually impossible to formulate a "short and plain statement of the claim."  *Id.*  Since section 1983 cases are no different than any other case, Mr. Harewood was only required to present facts sufficient to show that his claim is "plausible." *Twombly*, 560 U.S. 544, 570.

As stated above, Mr. Harewood alleged that since at least 2005, the County was notified that people were dying from being tasered.  Furthermore, in 2009, Taser International told the County to refrain from shooting suspects in the upper torso to prevent excessive injuries.  Most telling, however, the Commission passed Agenda Item No. 11(A)(7), which acknowledges that several incidents in Miami-Dade County involving the use of tasers have caused the "*accidental loss of life*." [D.E. 4-1, ¶57].  The phrase "accidental loss of life" connotes that officers have caused injuries more than what was necessary or intended.

These allegations are not "speculation or conjecture," but admissions by the County. Viewed in the light most favorable to Mr. Harewood, he sufficiently pled that the County knew about past violations.  *Johnson*, 135 S. Ct. at 347.

**Deliberate Indifference**

A municipality is only liable for inadequate police training where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.  *Lewis v. City of West Palm Beach*, 561 F. 3d 1288, 1292 (11th Cir. 2009).  To prove deliberate indifference, a plaintiff must present some evidence that the municipality knew of a need to train, but made a deliberate choice not to take any action, or alternatively, the likelihood

13

for a constitutional violation is so high that the need for training is obvious. *Id.* at 1293. Mr. Harewood established both.

The County undoubtedly knew of a need to train – Taser International told the County to refrain from shooting suspects in the upper torso to prevent excessive injuries, and the Commission even passed a resolution acknowledging that MDPD officers need additional training because the use of tasers in Miami-Dade County has caused "accidental loss of life." The only issue is whether the County made a deliberate choice not to take any actions.

It is important to note that no elected official will ever acknowledge a problem within its police department, but then publicly announce that he or she is unwilling to correct it. Other than showing that nothing has been done, it is very difficult to show that an elected official made a "deliberate choice" not to act. In other words, there is no way to prove a "deliberate" failure to act, other than pointing to a lack of action. No other reasonable alternative is available.

Here, the Commission acknowledged the inadequacy of its officers' training, but failed to take any action to correct the problem. The County's long period of inaction "nudges [Mr. Harewood's] claim across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 560 U.S. 544, 570 (2007).

Finally, the likelihood that MDPD will violate an individual's constitutional right when deploying a taser is extremely high and the need for additional training is obvious. The County admitted that several people have been accidentally killed after being tasered, and that its officers are inadequately trained. There are very few situations where the need for training is more obvious than this. Viewed in the light most favorable to Mr. Harewood, the Complaint alleged sufficient facts to support the assertion that the County was deliberately indifferent.

### III. THE COUNTY IS NOT ENTITLED TO SOVEREIGN IMMUNITY ON MR. HAREWOOD'S STATE LAW CLAIMS.

The crux of the County's argument is that it is immune for the acts of its officers committed in bad faith or with a malicious purpose. [D.E. 11, pg. 17]. The County claims that the allegations in the Complaint can only be characterized as actions committed in bad faith or malicious purpose. The County overlooks two key factors in its "bad faith" analysis.

First, the County fails to acknowledge that Officer Alexander could have reasonably believed that the County's policy allowed him to taser Mr. Harewood, at least when he deployed the first taser shot. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988); *Owen v. City of Independence, Mo.*, 445 U.S. 622, 642 (1980); *Garner v. Memphis Police Dept.*, 8 F. 3d 358, 365 (6th Cir. 1993). As explained above, the County's policy allows officers to taser anyone who fails to comply with even a single instruction, whether lawful or not, and does not require the officer to afford the subject a reasonable opportunity to comply. Viewed in the light most favorable to Mr. Harewood, the allegations in the Complaint show that Officer Alexander could have believed that he was acting in good faith reliance on the County's taser policy when he deployed the first shot.

Second, should this case go to trial, the County will undoubtedly claim that Officer Alexander did not act with "malice" or "bad faith."[8] If the Court dismisses the County, a problem occurs if the jury believes that Officer Alexander acted within his capacity as an officer, yet still finds that he falsely arrested and battered Mr. Harewood. In such a situation, the state law claim against the County would be dismissed, Officer Alexander would be immune because

---

[8] Even though the County must accept the facts in the Complaint as true, the County actually denied the allegations in a footnote in its Motion to Dismiss.

he acted in "good faith," and Mr. Harewood would be out of luck.  Since there is obviously a disagreement as to the facts of this case, the bad faith issue should be left to the jury.[9]  *See Claridy v. Golub*, 632 Fed. Appx. 565 (11th Cir. 2015)(whether officer acted willfully or with malice is a question of fact for the jury); *Bank of Am. Corp. v. Valladares*, 141 So. 3d 714, 718 (Fla. 3d DCA 2014).

## CONCLUSION

Wherefore, Plaintiff, Cuthbert Harewood, respectfully requests for this Court to enter an Order denying Defendant's Motion to Dismiss.  [D.E. 11].

Respectfully submitted,

Hilton Napoleon, II, Esq., FBN 17593
Miguel A. Morel, Esq., FBN 89163
RASCO KLOCK PEREZ & NIETO
2555 Ponce de Leon Boulevard, Suite 600
Coral Gables, Florida 33134
Telephone: 305.476.7115
Facsimile: 305.675.7707

By: /s/ Hilton Napoleon, II
    Hilton Napoleon, II

---

[9] This is especially true now that Officer Alexander has been served with the Complaint, and the County Attorney's Office is currently representing both he and the County.  At a minimum, the Court should see how Officer Alexander responds to the allegations in the Complaint.

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on July 11, 2016, I have filed the foregoing document with the Clerk of the Court using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel and parties of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those parties who are not authorized to receive electronically Notices of Electronic Filing.

                                        By:  /s/ Hilton Napoleon, II
                                              Hilton Napoleon, II