## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 1:16-cv-21874-KMM

CUTHBERT HAREWOOD,

    Plaintiff,

v.

MIAMI-DADE COUNTY, a political
Subdivision of the State of Florida and
JOHN ALEXANDER, a resident of the
State of Florida,

    Defendants.
                                            /

## ORDER GRANTING MOTION TO DISMISS

THIS CAUSE is before the Court on Defendant Miami-Dade County's Motion to Dismiss Plaintiff Cuthbert Harewood's Second Amended Complaint (ECF No. 20). Plaintiff filed a Response (ECF No. 20) and Defendant Miami-Dade County filed a Reply (ECF No. 25). The matter is now ripe for review.

UPON CONSIDERATION of the Motion, the Response, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

### I. BACKGROUND[1]

On July 20, 2013, Plaintiff Cuthbert Harewood ("Plaintiff") was waiting for his wife, Ms. Coleman, to arrive in her vehicle at the corner of NW 18th Avenue and NW 67th Street in Miami-Dade County. Second Am. Compl. ¶ 17. Ms. Coleman pulled up to the street and Plaintiff approached the driver's side window. *Id.* ¶ 18. Plaintiff leaned inside the vehicle to advise Ms. Coleman where to park. *Id.* 19. As Plaintiff did so, Officer John Alexander pulled

---

[1] The following background facts are taken from Plaintiff's Second Amended Complaint, (ECF No. 4-1), and accepted as true for purposes of ruling on this Motion to Dismiss.

up behind Ms. Coleman's vehicle. *Id.* Officer Alexander instructed Plaintiff to move away from the vehicle. *Id.* ¶ 20. Plaintiff attempted to explain that he was telling Ms. Coleman where she should park, but before he could finish doing so, Officer Alexander yelled at Plaintiff to get away from the car. *Id.* ¶¶ 22, 24. Plaintiff placed his hands at shoulder height with his palms facing forward and backed away from Ms. Coleman's car until he was on the sidewalk. *Id.* ¶¶ 25-6. As he stepped onto the sidewalk, Plaintiff told Officer Alexander "I am a grown man. You do not have to talk to me like that." *Id.* ¶ 26. Officer Alexander then exited his vehicle, raced over to Plaintiff, and "slammed" him to the middle of the street. *Id.* ¶ 27. Plaintiff did not resist Officer Alexander at any point and, while Plaintiff lay on the ground, Officer Alexander tased Plaintiff in his upper torso near his heart. *Id.* ¶¶ 28-29. According to the report generated by Officer Alexander's taser, Officer Alexander tased Plaintiff three times during an eighteen second period and each cycle lasted five seconds and employed 50,000 volts. *Id.* ¶¶ 30-33. Plaintiff motioned toward his chest in pain and Officer Alexander pulled out his firearm, placed it against Plaintiff's head, and screamed "I will fucking kill you." *Id.* ¶ 34. As a result of being tased, Plaintiff was unable to control his bladder for over two weeks and required the insertion of a catheter in his heart. *Id.* ¶ 35.

Plaintiff alleges four causes of action against Miami-Dade County (the "County")[2]: Count I – Deprivation of Civil Rights – Failure to Train; Count II – Deprivation of Civil Rights – Miami Dade County's Taser Policy Violates the Fourth Amendment; Count III – State Law False Arrest/Imprisonment; and Count IV – State Law Battery.

---

[2]   Plaintiff alleges seven causes of action in all, however, only Counts I through IV are alleged against the County and the subject of the instant motion to dismiss.

## II.     LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  The purpose of this requirement is "to give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555.  When considering a motion to dismiss, the court must accept all of the plaintiff's allegations as true, construing them in the light most favorable to the plaintiff.  *Pielage v. McConnell,* 516 F.3d 1282, 1284 (11th Cir. 2008).

A complaint must also contain enough facts to indicate the presence of the required elements.  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007).  However, "[a] pleading that offers 'a formulaic recitation of elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal."  *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

## III.    DISCUSSION

### A.     Section 1983 Liability Based on an Officially Promulgated Policy

The County argues that Plaintiff fails to allege or identify an officially-promulgated county policy because Agenda Item No. 12(B)7, (ECF No. 11-1 at 1), is a memorandum from the County Manager to the Chairman and Members of the Commission containing the results of the Miami-Dade Police Department's review of its "revised taser policy," not an officially

promulgated policy.³ Defs' Br. at 7 (ECF No. 20). Even if the Court were to construe Agenda Item No. 12(B)7 as an official policy, the County argues that the policy does not cause the deprivation of civil rights.

Section 1983 provides a private cause of action against a government for its unconstitutional actions. *Vila v. Miami-Dade Cnty.*, 65 F. Supp. 3d 1371, 1379 (S.D. Fla. 2014) (citing *Monell v. New York City Dep't of Social Srvcs.*, 436 U.S. 658, 690 (1978). However, "[t]he Supreme Court has placed strict limitations on municipal liability under section 1983." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). A local governmental entity cannot be held liable under § 1983 using a respondeat superior theory for injuries caused solely by its employees. *Monell*, 436 U.S. at 694. In order to impose § 1983 liability on a local governmental entity, "a plaintiff must show: (1) that his constitutional rights were violated; (2) that the [local governmental entity] had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the local government may be held liable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (internal citation omitted). In order to establish that such a policy exists, the party must prove either "(1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown

---

³ Agenda Item No. 12(B)7 is a public record whose contents are not in dispute and which Plaintiff cites to throughout the Second Amended Complaint. As such, the Court may consider Agenda Item No. 12(B)7 in its analysis. *See Brooks v. Blue Cross and Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 ("where the plaintiff refers to certain documents in the complaint and these documents are central to plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment."); *Harris v. Ivax Corp.,* 182 F.3d 799, n. 2(11th Cir. 1999) ("A document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute").

through repeated acts of a final policymaker for the county. *Grech v. Clayton Cnty. Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003).

Plaintiff alleges that the County's officially promulgated taser policy (the "Taser Policy")[4] violates a citizen's Fourth Amendment right to be free from excessive force. The Taser Policy states in relevant part:

> Escalating resistance from passive physical resistance toward active physical resistance occurs when the subject is exhibiting threatening body language (which is including but not limited to balding the body, assuming a boxer stance, circling the officer, moving the hands from open to closed forming a fist, etc.) associated with verbal threats, *or refusing to comply with the officer's instructions and has the apparent ability to physically challenge the officer*.

*See* Taser Policy at 107 (emphasis added). Plaintiff argues that the last clause, "or refusing to comply with the officer's instructions and has the apparent ability to physically challenge the officer," is overly broad.

First, the parties dispute whether Agenda Item No. 12(B)7 constitutes an "official policy." The Court agrees with the County that Agenda Item No. 12(B)7 does not constitute an official policy—it is a memorandum and, from the face of the memorandum, it is unclear that the Taser Policy was adopted by the County. *See Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) ("A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality."). Plaintiff's argument that the passage of Agenda Item No. 12(B)7 is evidence that the Taser Policy was adopted and became an official policy is speculative at best.

---

[4] Plaintiff refers to the Miami-Dade Police Department Procedures for Use of the Taser Revised December 2004 ("MDPD Procedures for Use of the Taser") (ECF No. 11-1 at 102-107) as the "Taser Policy." *See* Pl's Br. at 6 (ECF No. 25). The Taser Policy is attached to a memorandum from the Director of the Miami-Dade Police Department to the County Manager, dated December 16, 2004. (ECF No. 11-1 at 100; Attachment E to Agenda Item No. 12(B)7).

5

Second, even if the Court were to find that the Taser Policy was adopted by the County and in effect at the time of the incident which gave rise to the Second Amended Complaint, the Taser Policy is not unconstitutional as applied.  Plaintiff argues that the Taser Policy is unconstitutional as applied because it permitted Officer Alexander to taser him for "essentially not listening fast enough."  *See* Pl's Br. at 8.  Specifically, Plaintiff argues that the "County's policy does not limit the use of force by distinguishing between subjects who are in the process of complying with the officer's instruction and those who are not, nor does it distinguish between subjects who have committed a crime and those who have not" and thus the Taser Policy is unreasonable. *Id.*

The Taser Policy states "[t]he Miami-Dade Police Department (MDPD) embraces a philosophy, which includes a policy to use only that level of force reasonably necessary to control or otherwise subdue violent or potentially violent individuals." *See* Taser Policy at 102. The Taser Policy also states that "[a]n officer's response level to subject resistance should always depend upon subject/officer factors such as age, size, weight, and the subject's apparent ability to physically challenge the officer or do harm to himself or others, balanced against the seriousness of the incident." *Id.*  Further, "[a]n officer's decision to deploy the Taser shall involve an arrest or custodial situation wherein the subject is escalating resistance from passive physical resistance towards active physical resistance." *Id.*  There are additional provisions for how an officer should respond when a subject is exhibiting threatening body language and when a subject makes physically evasive movements to defeat an officer's attempt at control.

Plaintiff relies upon *Tennessee v. Garner,* 471 U.S. 1 (1985), to support his argument that the Taser Policy is unconstitutional as applied.  There, the statute in question provided "[i]f, after notice of the intention to arrest the defendant, he either flee [sic] or forcibly resist [sic], the

6

officer may use all the necessary means to effect the arrest." *Id.* at 5. The Court of Appeals for the Eleventh Circuit found that the statute failed as applied in *Garner* "because it did not adequately limit the use of deadly force by distinguishing between felonies of different magnitudes—'the facts, as found, did not justify the use of deadly force under the Fourth Amendment.'" *Id.* at 6 (internal citation omitted). The Supreme Court held that "[t]he use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable" and held that the statute, while not unconstitutional on its face, was unconstitutional as applied in those circumstances. *Id.* at 11. Unlike the facts in *Garner*, here, the Taser Policy pertains to a "less than lethal Conducted Energy Weapon" and does not justify the use of deadly force. *See* Taser Policy at 102. Further, the Taser Policy, unlike the statute in *Garner*, provides adequate limitations to the use of force and sets forth procedural guidelines for various hypothetical scenarios. *See Wakefield v. City of Pembroke Pines*, 269 Fed. App'x 936, 940 (11th Cir. 2008) (affirming district court's grant of summary judgment in favor of City as to section 1983 claim where plaintiff failed to submit any evidence that the City had an officially adopted policy authorizing the use of excessive force against African-Americans and, in fact, the record demonstrated that the general orders of the police department "instruct[ed] officers to use the minimum amount of force necessary to control the subject and to use deadly force only as a last resort"). Thus, the Taser Policy which Plaintiff alleges was in effect at the time of the incident is objectively reasonable as applied.

Third, Plaintiff fails to allege that the Taser Policy caused the violation. The "official policy must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Polk Cnty. v. Dodson,* 454 U.S. 312, 326 (quoting *Monell*, 436 U.S. at 694). A plaintiff "must demonstrate "that the municipal action was taken with the

7

requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Board of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997). "Rigorous standards of culpability and causation must be applied to ensure that the [local governmental entity] is not held liable solely for the actions of its employee." *Id.* at 405. Contrary to Plaintiff's assertion that the policy "allows officers to taser anyone who fails to follow instructions, regardless of whether the command is lawful, the subject is afforded a reasonable opportunity, or the officer gives a single command," the Taser Policy explicitly states that "[t]he Taser shall not be used as a tool of coercion, to intimidate an individual into compliance with simple requests or directives by an officer." *See* Taser Policy at 102. Plaintiff has failed to sufficiently allege that the Taser Policy caused the alleged constitutional violation. *See Polk Cnty.*, 454 U.S. at 326.

For the foregoing reasons, the Court finds that Plaintiff has failed to state a claim under Section 1983 based on an officially promulgated policy.

### B. Section 1983 Liability for a Failure to Train

The County argues that Plaintiff's claim for failure to train must be dismissed because Plaintiff has failed to: (1) identify a widespread practice of inadequate training that the County was aware of but deliberately indifferent to; (2) allege any facts demonstrating that the Commission or Mayor approved of a policy or custom of failing to properly train police officers, which caused any alleged injuries; and (3) allege or identify a pattern of widespread prior constitutional violations that show that the County displayed deliberate indifference to the purported unconstitutional acts of its officers. Def's Br. at 15 (ECF No. 11).

A local governmental entity's "liability flowing from a policy or custom 'may include a failure to provide adequate training if the deficiency evidences a deliberate indifference to the

rights of its inhabitants.'" *Rivas v. Figueroa*, No. 11-23195-Civ., 2012 WL 1378161, *2 (Apr. 20, 2012) (quoting *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2009)). "The Supreme Court has cautioned 'that there are limited circumstances in which an allegation of a failure to train can be the basis for liability under § 1983.'" *Whitaker v. Miami-Dade Cnty.*, 126 F. Supp. 3d 1313, 1323 (S.D. Fla. 2015) (quoting *City of Canton*, 489 U.S. at 389). A local governmental entity's failure to train must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick v. Thompson*, 563 U.S. 51 (2011). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997).

Because it is rare for a local governmental entity to have an express written or oral policy of inadequately training its employees, the Supreme Court has elaborated that a plaintiff may prove the existence of such a policy by showing that a failure to train evidenced a "deliberate indifference." *See Gold v. City of Miami*, 151 F.3d at 1350. "Municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by city policymakers." *City of Canton*, 489 U.S. at 389 (internal quotation omitted). In order to establish a "deliberate indifference," a plaintiff must present evidence of the local governmental entity's knowledge of a need to train and/or supervise with respect to a particular area and that the local governmental entity made the deliberate choice not to take action. *See Gold v. City of Miami*, 151 F.3d at 1350. As such, notice is a necessary requirement. *See Wright v. Sheppard*, 919 F.2d 665 (11th Cir. 1990). The Court of Appeals for the Eleventh Circuit has stated that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; [and (3)] conduct that is more

than mere negligence." *Williams v. DeKalb Cnty.*, 327 Fed. App'x 156, 160 (11th Cir. 2009) (quoting *McElligott v. Foley*, 182 F.2d 1248, 1255 (11th Cir. 1999)).

Plaintiff alleges that the County violated his constitutional rights by failing to train its officers, including Officer Alexander, on the known dangerous consequences of tasing individuals in the upper torso with Taser X26. *See* Second Am. Compl. ¶ 45. Specifically, Plaintiff alleges that the County was "aware of prior incidents where officers tased individuals in the upper torso causing death or serious bodily injury" in 2005. *Id.* ¶ 49. Plaintiff also cites the 2014 passage of Agenda Item No. 11(A)(7),[5] which noted that Miami-Dade Police Department may need to reform policies related to taser use and training, in support of his contention that the County was on notice of several incidents "involving the use of tasers on individuals who have subsequently lost their lives." *See* Second Am. Compl. ¶¶ 57.

Plaintiff's general allegations of "several incidents involving the use of Tasers on individuals who subsequently died" are insufficient. *See Callahan v. City of Hollywood*, No. 14-CIV-62960, 2015 WL 1191174, *6 (S.D. Fla. Mar. 13, 2015) (in granting the motion to dismiss, the court held that plaintiff's allegations of "long-standing, wide-spread history of failing to properly hire, train and supervise" were too conclusory to support notice pleading). Furthermore, the incident which gave rise to the complaint occurred in 2013, thus, the 2014 passage of Agenda Item No. 11(A)(7) is not evidence of prior notice. The Court is left with the bare allegation that the County's 2005 decision to conduct a study on the effects of tasers and recommendations from Taser International in 2009 are evidence of a need to train, one that the

---

[5]  Plaintiff alleges that "[i]n June 2014, Miami Dade County Board of Commissioners passed Agenda Item No. 11(a)(7), which acknowledged 'several incidents in recent months in Miami-Dade County involving the use of tasers on individuals who have subsequently lost their lives," and 'given the potential harmful medical consequences of electroshock weapons, Miami-Dade Police Department may need to reform their policies for the use of the taser and provide additional training to dramatically reduce accidental loss of life.'" Second Am. Comp. ¶ 57.

County allegedly ignored. Plaintiff's reliance upon a memorandum acknowledging the risks of tasers, standing alone, is insufficient evidence to support his argument that the County consciously disregarded those risks. *See Vila*, 65 F. Supp. at 1379 (S.D. Fla. 2014) ("even assuming that the Mayor's memorandum demonstrates notice of a need to train . . . Plaintiff must also show that County policymakers deliberately ignored this notice . . . [i]n fact, Plaintiff's cited policies seem to indicate the opposite of a deliberate choice of inaction."). Plaintiff has not sufficiently alleged any prior incidents that put the County on notice of a need for additional training or supervision. *See Gold*, 151 F.3d at 1351 ("This Court repeatedly has held that without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise").

It is possible that a need to train is "so obvious" that a local governmental entity may be liable without a pattern of prior constitutional violations. *See Brown*, 520 U.S. at 409 (the Supreme Court "simply hypothesized that, in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations"). However, "[t]he single-incident liability exception is a narrow one." *Whitaker*, 126 F. Supp.3d at 1325.

In Count I, Plaintiff alleges that the County acted with deliberate indifference to Plaintiff's constitutional rights by failing to train its officers in the following ways: (1) failing to train its officers on the known dangerous consequences of tasing individuals in the upper torso with Taser X26; (2) failure to train its officers on the dangerousness of tasing individuals in the chest; and (3) failing to train Officer Alexander on Taser International's warnings and recommended point of aim. *See* Second Am. Compl. ¶¶ 45, 48, 55. These allegations are conclusory allegations, not well-pled facts. The facts alleged in the Second Amended

Complaint, construed in the light most favorable to Plaintiff, do not give rise to the reasonable inference that Plaintiff's injuries were a result of the County's deliberate indifference to Plaintiff's rights. *See Whitaker*, 126 F. Supp.3d at 1327 (dismissing plaintiff's failure to train claim upon concluding that the facts alleged did not "plausibly give rise to the inference that a final policymaker for the County made a decision not to train the officer or that it was obvious that the failure to do so would result in a constitutional deprivation").

The Court finds that Count I fails to adequately state a claim under Section 1983 for failure to train.

### C. **State Law Claims**[6]

The County argues that it is entitled to sovereign immunity on Counts III and IV because the allegations against Officer Alexander amount to bad faith and/or willful conduct. The doctrine of sovereign immunity provides that the County—as a political subdivision of the State of Florida—is immune from suit except in instances where the State has given its consent to be sued. *Moore v. Miami-Dade Cnty.*, 502 F. Supp. 2d 1224, 1234-5 (S.D. Fla. 2007). The State of Florida gave consent to be sued in tort actions through the enactment of Florida Statute § 768.28, with the limitation that the State waived its sovereign immunity from liability for torts "only to the extent specified" in the statute. *Id.* at 1235. "Florida courts have routinely held that a governmental entity may not be held liable where its employee's actions were malicious, in bad faith, or showed reckless or wanton disregard for human rights, safety or property." *Id.*

---

[6] "[T]he nature of Florida Statutes § 768.28 tends to require a plaintiff to plead alternative and inconsistent claims against a government entity and its employees." *Valdes v. Miami-Dade Cnty.*, No. 12-22426-CIV, 2013 WL 5429938, *18 (S.D. Fla. Sept. 27, 2013) (internal quotation omitted). While a plaintiff would not ultimately be able to prevail on claims against both a government entity and its employees, a plaintiff is not barred from making "alternative, inconsistent allegations at the pleading stage." *Garayoa v. Reina*, No. 16-20213-Civ-Cooke/Torres, 2016 WL 3348536, *2 (S.D. Fla., June 16, 2016) (appeal pending). However, the Court notes that Plaintiff has not plead Claims III and IV in the alternative.

In Count III, Plaintiff alleges that Officer Alexander "intentionally restrained Mr. Harewood against his will under circumstances that were unreasonable and unwarranted, and without legal authority." Second Am. Compl. ¶ 93. In Count IV, Plaintiff alleges that Officer Alexander "slam[ed] Mr. Harewood into the ground and intentionally tas[ed] him three times." *Id.* ¶ 102. For both Counts III and IV, Plaintiff re-alleges the facts detailing the sequence of events. *See id.* ¶¶ 90, 98.

Plaintiff argues that the County's "bad faith" analysis in support of its argument that it is entitled to sovereign immunity fails to consider the following: (1) that Officer Alexander could have reasonably believed that the County's policy allowed him to taser Plaintiff, at least with the first taser shot; (2) that the issue of "bad faith" should be left for the jury; and (3) the Court should await Officer Alexander's response to the allegations in the Second Amended Complaint.

Plaintiff's allegations in Counts III and IV, which state that Officer Alexander acted willfully, unreasonably, and without authority "cannot be characterized as anything other than [an act] committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *Blue v. Miami-Dade Cnty.*, 2011 WL 2447699, *2 (internal quotation omitted). The Court can make the bad faith determination based on the facts alleged in Plaintiff's Second Amended Complaint. *See Prieto v. Malgor*, 361 F.3d 1313, 1320 (11th Cir. 2004). The Court agrees with the County that Plaintiff's allegations as to Officer Alexander state a claim for "wanton" and "malicious" acts and thus do not give rise to municipal liability under Florida's waiver of sovereign immunity. *See Mena v. Miami-Dade Cnty.*, 2014 WL 3667806, *2 (holding that the County was not liable for the actions of its detectives who pulled plaintiffs out of a car, threw them, beat them, handcuffed and arrested them).

For the foregoing reasons, Plaintiff's state law claims against the County are dismissed without prejudice.

IV.     **CONCLUSION**

For the foregoing reasons, it is ORDERED AND ADJUDGED that Defendant Miami-Dade County's Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 11) is GRANTED and Plaintiff's Second Amended Complaint (ECF No. 4-1) as to defendant Miami-Dade County is hereby DISMISSED WITHOUT PREJUDICE.

The County's Motion to Stay Discovery (ECF No. 29) until resolution of its pending Motion to Dismiss (ECF No. 11) is DENIED AS MOOT.

Plaintiff filed a Motion to Strike Portions of Miami-Dade County's Reply (ECF No. 27) and Defendant Miami-Dade County filed a Response (ECF No. 28).  Plaintiff asks that the Court strike Exhibit 1 to the County's Reply (ECF No. 25), which the County propounds as evidence of "the procedures that were in place in 2013" and portions of the Reply that refer to Agenda Item No. 12(B)7 as an outdated policy.  The Court did not consider Exhibit 1, or the portions of the County's Reply which referred to Agenda Item No. 12(B)7 as an "outdated" policy, in ruling on the County's Motion to Dismiss (ECF No. 11).  Accordingly, Plaintiff's Motion to Strike (ECF No. 27) is DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this <u>14th</u> day of November, 2016.

_____
K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE

c: All counsel of record

14