UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:16-CV-21874-KMM

CUTHBERT HAREWOOD

    Plaintiff,

v.

MIAMI-DADE COUNTY, a political
Subdivision of the State of Florida and JOHN
ALEXANDER, a resident of the State of
Florida,

    Defendants.

_____

**DEFENDANT OFFICER JOHN ALEXANDER'S MOTION
*IN LIMINE* TO EXCLUDE EVIDENCE AND TESTIMONY AT
TRIAL AND INCORPORATED MEMORANDUM OF LAW**

Defendant, Officer John Alexander ("Officer Alexander" or "Defendant"), seeks to exclude the following at trial: (1) any testimony or evidence regarding Plaintiff, Cuthbert Harewood's ("Plaintiff['s]"), lost wages; (2) evidence and testimony relating to any physical or emotional distress allegedly suffered by Ms. Coleman, a non-party; (3) improper bolstering of Plaintiff's character through reference to his community activism, political connections, and awards; (4) improper opinion testimony, based on hearsay, as it relates to the Taser's voltage; (5) reference to other instances in which Defendant has either activated or deployed his Taser or discharged his firearm; and (6) the documentary DVD produced by Plaintiff during discovery.

Plaintiff's claims against Defendant are for excessive force, false arrest, and retaliation, pursuant to 42 U.S.C. § 1983. On July 20, 2013, Plaintiff was arrested for battery on a law enforcement officer and resisting arrest without violence. While attempting to arrest Plaintiff, Defendant used force by tasing Plaintiff three times. As a result of having been tased three

times, Plaintiff claims to suffer from several chronic conditions including erectile dysfunction syndrome, urinary incontinence, a cardiac injury that required the placement of a stent in his heart, hand tingling, Post-Traumatic Stress Disorder ("PTSD"), depression, and anxiety. As discussed below, Plaintiff seeks to introduce a vast array of irrelevant, unsubstantiated, and inflammatory details about his life, his medical state, and his emotional condition. The Court should exclude such evidence because its negligible probative value, if any, is outweighed by the danger of unfair prejudice.

Additionally, Officer Alexander will be filing a motion to compel the records of Dr. Charles Gibbs, Phd, one of Plaintiff's treating psychologists. During discovery, Plaintiff refused to execute a medical release for Defendant to obtain these records through a third party subpoena. As a result, Officer Alexander was forced to file a motion to compel (ECF No. 51), which Magistrate Judge McAliley denied without prejudice. *See* (ECF No. 57). In the Order Denying Motion to Compel, Judge McAliley ordered Plaintiff to request and review his records from Dr. Gibbs no later than January 9, 2017, and inform Defendant if he will agree to voluntarily produce the records, or explain in detail any objections, including privilege, which he has to their production. *Id*. at 1. Plaintiff is now in possession of his records from Dr. Gibbs, but he refuses to voluntarily produce them, even though he is claiming damages for psychological and emotional distress. Additional evidentiary issues may arise following Judge McAliley's order on the forthcoming motion to compel. As such, Officer Alexander respectfully requests an opportunity to file a supplemental motion *in limine* or motion to strike following Judge McAliley's ruling on his motion to compel.

### 1. Improper Bolstering of Plaintiff's Character

This Court should exclude from trial any and all references to Plaintiff's purported status in the community, including any mention of his alleged political connections, family members who work in law enforcement, networking events, community service projects, awards, volunteer activities with children, and general activism.  Counsel for Plaintiff has indicated that he plans to introduce such evidence at trial.  In the Second Amended Complaint, Plaintiff avers as follows:

> 13. Mr. Harewood has dedicated the vast majority of his adult life to improving the living conditions of citizens who reside in Liberty City.
>
> 14. Simply put, Mr. Harewood is a pillar of that community.  He has received numerous awards and recognition for his work in Liberty City from a wide array of government entities and officials, including Miami-Dade Carlos Gimenez, several Miami-Dade County Commissions, the Miami-Dade Police Department, the Miami-Dade School Board, and the City of Miami.
>
> 15. Most recently, Mr. Harewood received a Congressional Proclamation from the Honorable Fredericka [sic] Wilson, United States House of Representative, for his work in revitalizing Liberty City.
>
> 16. Mr. Harewood has also spent countless hours working with police departments to reduce crime in his area and improve police/citizen encounters.

(ECF No. 4-1 at ¶¶ 13-16).  Also, throughout his deposition testimony, Plaintiff repeatedly brought up his work with children, community activism, political connections, volunteerism, and relatives in law enforcement.  *See*, *e.g.*, Plaintiff's Dep. Vol. I at 36:6-10,  41:15-20, 60:3-20, 62:8-17, 68:17-25, 69:3-19, 70:18-19, 107:2-16, 121:25-122:2; 123:20-125:2, 132:11-17, 134:19-24; 144:20-145:10, 147:11-21 (ECF No. 66-2); *see also*, *e.g.*, Plaintiff's Dep. Vol. II at 249:8-13 (ECF No. 66-3).  Even when the question did not call for any reference to his community service or political connections, Plaintiff volunteered such irrelevant information.

3

For instance, when asked the very simple and straight forward question, "Had you ever met [Defendant] before July 20, 2013?" Plaintiff responded as follows:

> Not that I can recall. I mean, I met people that I don't remember. I'm not like Obama, . . . with the ability he have that on the third occasion me [sic] shaking his hand he say, 'Hi, Broadway.' I was blown away. I'm like, how in the hell can you remember all these people?

Plaintiff's Dep. Vol. I at 132:7-15 (ECF No. 66-2). On another unprovoked occasion, Plaintiff volunteered that he danced with Rick Scott's mother at his inauguration. *Id*. at 134:5-24. This Court should exclude such testimony and all other similar evidence from introduction at trial.

    To begin, the evidence is irrelevant to the issues at trial. Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. Such evidence, however, is not relevant to the claims and defenses at trial pursuant to Rule 402 because presenting his community service and political connectedness does not make the existence of any material fact, such as whether Officer Alexander used reasonable force, more probable or less probable. Additionally, these anecdotes are unfairly prejudicial to Officer Alexander. Because jurors may be improperly swayed by sentiment in response to Plaintiff's philanthropy, political connections, and community service, such evidence is sure to suggest decision on an improper basis—namely, emotion. On these grounds, the Court should exclude the evidence under Rule 403.

    Furthermore, Federal Rule of Evidence 404(a) specifically provides that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith." Indeed, "[e]vidence of a person's character is viewed with some suspicion under the law and generally is disfavored in the Federal Rules of Evidence." *Schafer v. Time, Inc.*, 142 F.3d 1361, 1370 (11th Cir. 1998) (citing Rule 404). Plaintiff's testimony about

his work with children, community service and activism, or receipt of awards and accolades is precisely the type of evidence and character inference which 404(a) seeks to exclude. Given the frequency with which Plaintiff spontaneously discussed his accolades, community involvement, philanthropic tendencies, and political connections at deposition, Defendant is concerned that Plaintiff may do the same at trial. Because it is not relevant, unfairly prejudicial, and improper character evidence, it must be excluded under Rules 401, 403, and Rule 404(a), respectively.

### 2. Myrlie Coleman

Myrlie Coleman is a non-party eyewitness to the incident giving rise to Plaintiff's claims. Given her testimony at deposition, Defendant expects Ms. Coleman will attempt to introduce evidence of her own mental and emotional distress at trial. When asked whether the incident giving rise to this lawsuit affected her in any way, Ms. Coleman testified, "Yes . . . Mentally, emotionally. I don't have comfort." Coleman Dep. at 150:1-6 (ECF No. 66-20). She has also described herself as "not the same, like I used to be happy, smiling, but I put the best on the outside." *Id.* at 92:23-93:2 Ms. Coleman has also described how Plaintiff's alleged erectile dysfunction has impacted her life. *Id.* at 89:19-22, 164:23-165:1 ("And I'm really hurt about this because that's something I enjoy. I don't smoke. I don't get high, I don't drink, but I enjoy sex."). While it is one thing for Ms. Coleman to testify about Plaintiff's alleged erectile dysfunction, providing details about physical symptoms she has observed or physically experienced, it is another thing for her to lament about how those symptoms have affected her – physically or emotionally. *See id.* at 164:12-165:8.

Accordingly, Defendant asks this Court to exclude such evidence as irrelevant and likely to cause undue prejudice. *See* Fed. R. Evid. 401. As noted above, the issues at trial are whether Officer Alexander arrested Plaintiff without probable cause and then used unlawful force against

him in the course of his arrest. Plaintiff is seeking damages for emotional distress he allegedly suffered following the Arrest. Ms. Coleman, his girlfriend and a witness for him in this case, is not a party. Whether she suffered any emotional distress following the Arrest does not tend to prove or disprove whether the officer acted without probable cause or used unlawful force against Plaintiff.

Additionally, this type of evidence also carries a high risk of unfair prejudice. *See* Fed. R. Evid. 403. Rule 403 permits trial courts to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id.* Rather than supply information that tends to make a fact more or less probable, testimony about Ms. Coleman's alleged emotional distress may cause the jury to feel sympathy for her despite that she is not a party to the case. Given its lacking probative value and high likelihood of prejudice, the Court should exclude from trial any evidence or testimony about emotional distress Ms. Coleman has allegedly suffered as a result of the Arrest and the conditions surrounding the Arrest.

### 3. Lost Wages

Plaintiff is seeking approximately $2,000 in lost wages as consequential damages in this action. However, Plaintiff failed to produce **any** tax returns, pay stubs, or W-2 forms during discovery. Also, Plaintiff has admittedly failed to pay income taxes since 2011 (which predates his July 20, 2013 arrest). Plaintiff's Dep. Vol. I at 48:2-21 (ECF No. 66-2). Officer Alexander served requests for production seeking copies of income tax returns filed by Plaintiff for the past 10 years, as well as copies of W-2 forms or any other evidence of income for each of those years. Plaintiff responded by stating that he does not possess any W-2 forms, objected to the request as

overbroad, unduly burdensome, and irrelevant, "insofar as it requires [him] to gather and produce 'all income tax returns filed by [sic] the past 10 years." *See Plaintiff's Amended Response to Defendant John Alexander's First Request for Production*, attached hereto at Exhibit A, at 9, No. 33. The only document Plaintiff did produce in response to this request was a September 30, 2016 Statement of Retirement Benefits Payment from the Department of Financial Services, State of Florida. *See Plaintiff's Sept. 30, 2016 Retirement Statement*, attached hereto as Exhibit B. The 2016 Retirement Statement does not cover the 2013 timeframe from which Plaintiff's claims lost wages. Accordingly, Plaintiff should be prohibited from testifying regarding his unsubstantiated lost wages.

### 4. Taser Voltage

In the Second Amended Complaint, Plaintiff avers that Officer Alexander "pumped" and "thrusted" 50,000 volts into his chest. *See* (ECF No. 4-1 at ¶¶ 30-33). However, at deposition, Plaintiff admitted that he has no independent knowledge about the Taser's voltage. *See* Plaintiff's Dep. Vol. II at 193:7-14 (ECF No. 66-3). Rather, Plaintiff only believes that he received 50,000 volts of electricity through the Taser because of information he has learned through conversations with other people. As he explained, "Well, you got friend [sic] that got – they got taser guns, you know, and they talk about it. You know, like the major said, you know, he explain [sic] to me what that is, what it do, all that type of stuff." *Id.* at 191:15-21. These statements, which are the only basis for Plaintiff's belief that he received 50,000 volts of electricity each time he was tased, were made out of court and will be offered in evidence to prove the truth of the matter asserted in the statement. As such, they are hearsay and must be excluded. *See* Fed. R. Evid. 801, 802. Additionally, where Plaintiff will not be testifying as a

7

Taser expert in this case, he should be prohibited from testifying in the form of an opinion regarding scientific or technical matters. *See*. Fed. R. Evid. 701, 702.

5. **Other Instances in which Officer Alexander Activated or Deployed his Taser or Discharged his Firearm**

The parties are in agreement as to the exclusion of any evidence or testimony regarding other instances in which Officer Alexander has activated or deployed his Taser or discharged his firearm. During deposition, Officer Alexander was asked (1) how many times he has deployed his Taser, outside of this incident, and (2) whether he has ever had to discharge his firearm. Officer Alexander's Deposition at 21:19-21, 16:1-17:1 (ECF No. 66-4). Outside of the July 20, 2013 incident involving Plaintiff, Officer Alexander has deployed his Taser one other time. *Id*. 16:1-17:1. Officer Alexander did not discharge his firearm on July 20, 2013. He has, however, discharged his firearm one time while on duty. *Id*. at 21:19-22:19. Incidents in which Officer Alexander has used his Taser or firearm—other than what occurred on July 20, 2013—have no tendency to make any consequential fact at issue more or less probable. Accordingly, the parties have agreed to the exclusion of any such evidence at trial.

6. **July 20, 2013 DVD/Documentary**

During the course of discovery, Plaintiff produced a DVD containing a documentary from the night of his arrest. This original production contains interviews with Plaintiff, Ms. Coleman and community members. Also, the film contains a slideshow of photographs and video clips set to music showing Plaintiff networking with prominent political figures and engaging in community service. The parties have agreed that the DVD video will not be played at trial. However, Plaintiff has indicated that he may attempt to extract still frames from the video to introduce them as photographs. Where the film cannot be authenticated under Federal Rule of Evidence 901, Officer Alexander requests that it, and any still frames Plaintiff seeks to

8

extract, be excluded at trial. Additionally, because the video itself is replete with hearsay, it must be excluded. *See* Fed. R. Evid. 802.

WHEREFORE, Defendant respectfully requests that the Court enter an order excluding from trial evidence and testimony relating to: (1) improper bolstering of Plaintiff's character; (2) any emotional distress allegedly suffered by Myrlie Coleman; (3) Plaintiff's lost wages; (4) Taser voltage based on hearsay and offered through nonexpert opinion; (5) other instances in which Officer Alexander deployed his Taser or discharged his firearm; and (6) the DVD documentary Plaintiff produced during discovery.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Rule 7.1(a)(3) of the Local Rules of the Southern District of Florida, undersigned counsel certifies that this office communicated with Plaintiff's counsel on January 12, 2017 regarding the relief requested herein. Counsel for Plaintiff has agreed to the exclusion of evidence related to any instance, outside of what took place on July 20, 2013, in which Officer Alexander has either activated or deployed his Taser or discharged his firearm. Also, Plaintiff agrees not to play the DVD documentary at trial, but may seek to introduce extracted still frames as photographs. Plaintiff does not agree to any other relief herein sought.

Dated: January 13, 2017.

Respectfully submitted,

ABIGAIL PRICE-WILLIAMS
MIAMI-DADE COUNTY ATTORNEY
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128

By: */s/ Jennifer L. Hochstadt*
    Jennifer L. Hochstadt
    Assistant County Attorney
    Florida Bar No. 56035
    Telephone: (305) 375-5151
    Facsimile: (305) 375-5611
    E-Mail: hochsta@miamidade.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2017 a true and correct copy of the foregoing was served on all counsel of record in the manner indicated on the Service List below.

*/s/ Jennifer L. Hochstadt*
Assistant County Attorney

## SERVICE LIST

Hilton Napoleon, Esq.
e-mail: hnapoleon@rascoklock.com
RASCO KLOCK PEREZ NIETO
2555 Ponce de Leon Blvd., Suite 600
Coral Gables, Florida 33134
Tel: (305) 476-7111
Fax: (305) 675-7707
Counsel for Plaintiff
*Electronic service via CM/ECF*

Jennifer L. Hochstadt.
e-mail: hochsta@miamidade.gov
Miami-Dade County Attorney's Office
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128
Tel: (305) 375-5151
Fax: (305) 375-5634
Counsel for Defendant
*No Service Made*